**Frank D. SEINFELD, Plaintiff Below, Appellant,**

v.

**VERIZON COMMUNICATIONS, INC., Defendant Below, Appellee.**

No. 624, 2005.

Supreme Court of Delaware.

Submitted: July 19, 2006.
Decided: Sept. 25, 2006.

---

4. 331 A.2d at 385 (Citations omitted, emphasis in original.)

**118**

Robert D. Goldberg, Esquire, Biggs and Battaglia, Wilmington, Delaware, and Irving Bizar, Esquire (argued) and Natalie Marcus, Esquire, Ballon, Stoll, Bader & Nadler, P.C. and A. Arnold Gershon, P.C., New York, New York, for appellant.

Edward P. Welch, Esquire (argued) and Michael A. Barlow, Esquire, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

The plaintiff-appellant, Frank D. Seinfeld ("Seinfeld"), brought suit under section 220 of the Delaware General Corporation Law to compel the defendant-appellee, Verizon Communications, Inc. ("Verizon"), to produce, for his inspection, its books and records related to the compensation of Verizon's three highest corporate officers

from 2000 to 2002. Seinfeld claimed that their executive compensation, individually and collectively, was excessive and wasteful. On cross-motions for summary judgment, the Court of Chancery applied well-established Delaware law and held that Seinfeld had not met his evidentiary burden to demonstrate a proper purpose to justify the inspection of Verizon's records.

The settled law of Delaware required Seinfeld to present some evidence that established a credible basis from which the Court of Chancery could infer there were legitimate issues of possible waste, mismanagement or wrongdoing that warranted further investigation.[1] Seinfeld argues that burden of proof "erects an insurmountable barrier for the minority shareholder of a public company."[2] We have concluded that Seinfeld's argument is without merit.

█ We reaffirm the well-established law of Delaware that stockholders seeking inspection under section 220 must present "some evidence" to suggest a "credible basis" from which a court can infer that mismanagement, waste or wrongdoing may have occurred.[3] The "credible basis" standard achieves an appropriate balance between providing stockholders who can offer some evidence of possible wrongdoing with access to corporate records and safeguarding the right of the corporation to deny requests for inspections that are based only upon suspicion or curiosity.[4] Accordingly, the judgment of the Court of Chancery must be affirmed.

---

1. *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 681 A.2d 1026, 1031 (Del.1996); *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 567 (Del.1997); *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 166 (Del.Ch.1987).

2. Plaintiff's Opening Brief, p. 11 (February 13, 2006).

3. *Id.*

4. *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 571.

## Facts

Seinfeld asserts that he is the beneficial owner of approximately 3,884 shares of Verizon, held in street name through a brokerage firm. His stated purpose for seeking Verizon's books and records was to investigate mismanagement and corporate waste regarding the executive compensations of Ivan G. Seidenberg, Lawrence T. Babbio, Jr. and Charles R. Lee. Seinfeld alleges that the three executives were all performing in the same job and were paid amounts, including stock options, above the compensation provided for in their employment contracts. Seinfeld's section 220 claim for inspection is further premised on various computations he performed which indicate that the three executives' compensation totaled $205 million over three years and was, therefore, excessive, given their responsibilities to the corporation.

During his deposition, Seinfeld acknowledged he had no factual support for his claim that mismanagement had taken place. He admitted that the three executives did not perform any duplicative work. Seinfeld conceded he had no factual basis to allege the executives "did not earn" the amounts paid to them under their respective employment agreements. Seinfeld also admitted "there is a possibility" that the $205 million executive compensation amount he calculated was wrong.

The issue before us is quite narrow: should a stockholder seeking inspection under section 220 be entitled to relief without being required to show some evidence to suggest a credible basis for wrongdoing? We conclude that the answer must be no.

## Stockholder Inspection Rights

Delaware corporate law provides for a separation of legal control and ownership.[5] The legal responsibility to manage the business of the corporation for the benefit of the stockholder owners is conferred on the board of directors by statute.[6] The common law imposes fiduciary duties upon the directors of Delaware corporations to constrain their conduct when discharging that statutory responsibility.[7]

Stockholders' rights to inspect the corporation's books and records were recognized at common law because "[a]s a matter of self-protection, the stockholder was entitled to know how his agents were conducting the affairs of the corporation of which he or she was a part owner."[8] The qualified inspection rights that originated at common law are now codified in Title 8, section 220 of the Delaware Code, which provides, in part:

> (b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose.

Section 220 provides stockholders of Delaware corporations with a "powerful right."[9] By properly asserting that right under section 220, stockholders are able to obtain information that can be used in a variety of contexts. Stockholders may use information about corporate mismanagement, waste or wrongdoing in several ways. For example, they may: institute

---

5. *Malone v. Brincat*, 722 A.2d 5, 9 (Del.1998).

6. Del.Code Ann. tit. 8, § 141(a)(2006).

7. *Malone v. Brincat*, 722 A.2d at 9–10.

8. *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del.2002) (citing *Shaw v. Agri–Mark, Inc.*, 663 A.2d 464, 467 (Del.1995)).

9. *Disney v. Walt Disney Co.*, 857 A.2d 444, 447 (Del.Ch.2004).

derivative litigation; "seek an audience with the board [of directors] to discuss proposed reform or, failing in that, they may prepare a stockholder resolution for the next annual meeting, or mount a proxy fight to elect new directors." [10]

### Inspection Litigation Increases

More than a decade ago, we noted that "[s]urprisingly, little use has been made of section 220 as an information-gathering tool in the derivative [suit] context." [11] Today, however, stockholders who have concerns about corporate governance are increasingly making a broad array of section 220 demands. [12] The rise in books and records litigation is directly attributable to this Court's encouragement of stockholders, who can show a proper purpose, to use the "tools at hand" to obtain the necessary information before filing a derivative action. [13] Section 220 is now recognized as "an important part of the corporate governance landscape." [14]

### Seinfeld Denied Inspection

The Court of Chancery determined that Seinfeld's deposition testimony established only that he was concerned about the large amount of compensation paid to the three executives. That court concluded that Seinfeld offered "no evidence from which [it] could evaluate whether there is a reasonable ground for suspicion that the executive's compensation rises to the level of waste." [15] It also concluded that Seinfeld did not "submit any evidence showing that the executives were not entitled to [the stock] options." [16] The Court of Chancery properly noted that a disagreement with the business judgment of Verizon's board of directors or its compensation committee is not evidence of wrongdoing and did not satisfy Seinfeld's burden under section 220. The Court of Chancery held:

> viewing the evidence in the light most favorable to Seinfeld, the court must conclude that he has not carried his burden of showing that there is a credible basis from which the court can infer that the Verizon board of directors committed waste or mismanagement in compensating these three executives during the relevant period of time. Instead, the record clearly establishes that Seinfeld's Section 220 demand was made merely on the basis of suspicion or curiosity. [17]

### Evidentiary Barrier Allegation

In this appeal, Seinfeld asserts that the "Court of Chancery's ruling erects an insurmountable barrier for the minority

**10.** *Saito v. McKesson HBOC, Inc.,* 806 A.2d at 117.

**11.** *Rales v. Blasband,* 634 A.2d 927, 934–35 n. 10 (Del.1993) (quoted in *Grimes v. Donald,* 673 A.2d 1207, 1216 n. 11 (Del.1996)).

**12.** For an excellent discussion and analysis of these developments, *see* Stephen A. Radin, *The New Stage of Corporate Governance Litigation: Section 220 Demands,* 26 Cardozo L.Rev. 1595, 1647 (2005).

**13.** *Grimes v. Donald,* 673 A.2d at 1216 (citing *Rales v. Blasband,* 634 A.2d at 934–35 n. 10). *See also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 833 A.2d 961, 981 nn. 65–66 (Del.Ch.2003) (collecting cases).

**14.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d 563, 571 (Del.1997). *See also* E. Norman Veasey & Christine T. DiGuglielmo, *What Happened in Delaware Corporate Law and Governance from 1992–2004? A Retrospective on Some Key Developments,* 153 U. Pa. L.Rev. 1399, 1466–69 (2005) (discussing the use of section 220 and cases that have applied it).

**15.** *Seinfeld v. Verizon Commc'ns, Inc.,* 2005 WL 3272365 at *3 (Del.Ch.).

**16.** *Id.*

**17.** *Id.* (footnote omitted).

shareholder of a public company."[18] Seinfeld argues that:

> This Court and the Court of Chancery have instructed shareholders to utilize § 220 as one of the tools at hand. Yet, the Court of Chancery at bar, in requiring *evidence* makes a § 220 application a mirage. If the shareholder had evidence, a derivative suit would be brought. Unless there is a whistle blower, or a video cassette, the public shareholder, having no access to corporate records, will only have suspicions.[19]

Seinfeld submits that "by requiring evidence, the shareholder is prevented from using the tools at hand."[20] Seinfeld's brief concludes with a request for this Court to reduce the burden of proof that stockholders must meet in a section 220 action:

> Plaintiff submits that in a case involving public companies, minority shareholders who have access only to public documents and without a whistle blower or corporate documents should be permitted to have limited inspection based upon suspicions, reasonable beliefs, and logic arising from public disclosures.[21]

After oral arguments, this Court asked the parties for supplemental briefs that would address the following questions:

> A. Should a stockholder with a proper purpose be entitled to inspect carefully limited categories of corporate books and records, pursuant to Section 220, upon a showing that the stockholder has a rational basis for the stated purpose and no other purpose that would militate against inspection?
>
> B. If the standard in question "A" would not be appropriate, is there *any* reduced burden of proof under Section 220 that would improve stockholders' ability to obtain the "tools" to pursue derivative claims without disrupting corporations' orderly conduct of business and without inappropriately interfering with corporate decision-making? If so, articulate the reduced burden of proof. If not, explain why not.

We asked these questions in order to review the current balance between the rights of stockholders and corporations that is established by *Thomas & Betts Corp. v. Leviton Mfg. Co.*[22] and *Security First Corp. v. U.S. Die Casting & Dev. Co.*[23] and their progeny.

### Credible Basis From Some Evidence

■ In a section 220 action, a stockholder has the burden of proof to demonstrate a proper purpose by a preponderance of the evidence.[24] It is well established that a stockholder's desire to investigate wrongdoing or mismanagement is a "proper purpose."[25] Such investigations are proper, because where the allegations of mismanagement prove meritorious, investigation furthers the interest of all stockholders and should increase stockholder return.[26]

---

**18.** Plaintiff's Opening Brief, p. 11 (February 13, 2006).

**19.** *Id.*

**20.** *Id.* at 3.

**21.** *Id.* at 12.

**22.** *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1031 (Del.1996).

**23.** *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563 (Del.1997).

**24.** Del.Code Ann. tit. 8, § 220(c)(2006).

**25.** *Nodana Petroleum Corp. v. State ex rel. Brennan*, 123 A.2d 243, 246 (Del.1956).

**26.** *See Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 115 (Del.2002) ("where a [section] 220 claim is based on alleged corporate wrongdoing, and assuming the allegation is meritorious, the stockholder should be given enough information to effectively address the problem, either through derivative litigation

The evolution of Delaware's jurisprudence in section 220 actions reflects judicial efforts to maintain a proper balance between the rights of shareholders to obtain information based upon credible allegations of corporation mismanagement and the rights of directors to manage the business of the corporation without undue interference from stockholders. In *Thomas & Betts*, this Court held that, to meet its "burden of proof, a stockholder must present some *credible basis* from which the court can infer that waste or mismanagement may have occurred." [27] Six months later, in *Security First*, this Court held "[t]here must be *some evidence* of possible mismanagement as would warrant further investigation of the matter." [28]

Our holdings in *Thomas & Betts* and *Security First* were contemporaneous with our decisions that initially encouraged stockholders to make greater use of section 220. In *Grimes v. Donald*, decided just months before *Thomas & Betts*, this Court reaffirmed the salutary use of section 220 as one of the "tools at hand" for stockholders to use to obtain information.[29] When the plaintiff in *Thomas & Betts* suggested that the burden of demonstrating a proper purpose had been attenuated by our encouragement for stockholders to use section 220, we rejected that argument:

Contrary to plaintiff's assertion in the instant case, this Court in *Grimes* did not suggest that its reference to a Section 220 demand as one of the "tools at hand" was intended to eviscerate or modify the need for a stockholder to show a proper purpose under Section 220.[30]

In *Security First* and *Thomas & Betts*, we adhered to the Court of Chancery's holding in *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.* that:

A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief. There must be *some evidence* of possible mismanagement as would warrant further investigation of the matter.[31]

### Standard Achieves Balance

Investigations of meritorious allegations of possible mismanagement, waste or wrongdoing, benefit the corporation, but investigations that are "indiscriminate fishing expeditions" do not.[32] "At some point, the costs of generating more information fall short of the benefits of having more information. At that point, compelling production of information would be wealth-reducing, and so shareholders would not want it produced." [33] Accordingly, this

or through direct contact with the corporation's directors and/or stockholders").

**27.** *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d at 1031 (emphasis added).

**28.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 568 (original emphasis omitted; emphasis added)(quoting *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.,* 525 A.2d 160, 166 (Del.Ch.1987)).

**29.** *Grimes v. Donald,* 673 A.2d 1207, 1216 n. 11 (Del.1996).

**30.** *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.,* 681 A.2d 1026, 1031 n. 3 (Del.1996).

**31.** *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.,* 525 A.2d at 166 (emphasis added); *see also Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 568; *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d at 1031.

**32.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d 563, 571 (Del.1997).

**33.** Fred S. McChesney, *"Proper Purpose,"* Fiduciary Duties, and Shareholder–Raider Access to Corporate Information, 68 U. Cin. L.Rev. 1199, 1207–08 (2000).

Court has held that an inspection to investigate possible wrongdoing where there is no "credible basis," is a license for "fishing expeditions" and thus adverse to the interests of the corporation:[34]

> Stockholders have a right to at least a limited inquiry into books and records when they have established some credible basis to believe that there has been wrongdoing.... Yet it would invite mischief to open corporate management to indiscriminate fishing expeditions.[35]

A stockholder is "not required to prove by a preponderance of the evidence that waste and [mis]management are actually occurring."[36] Stockholders need only show, by a preponderance of the evidence, a credible basis from which the Court of Chancery can infer there is possible mismanagement that would warrant further investigation[37]—a showing that "may ultimately fall well short of demonstrating that anything wrong occurred."[38] That "threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing."[39]

Although the threshold for a stockholder in a section 220 proceeding is not insubstantial,[40] the "credible basis" standard sets the lowest possible burden of proof. The only way to reduce the burden of proof further would be to eliminate any requirement that a stockholder show *some evidence* of possible wrongdoing. That would be tantamount to permitting inspection based on the "mere suspicion" standard that Seinfeld advances in this appeal. However, such a standard has been repeatedly rejected as a basis to justify the enterprise cost of an inspection.[41]

■ In Delaware and elsewhere,[42] the "credible-basis-from-some-evidence" stan-

**34.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 571. *See also Skouras v. Admiralty Enters., Inc.,* 386 A.2d 674, 679 (Del.Ch.1978) (noting that the use of a books and records inspection to harass the corporate defendant is improper); *Skoglund v. Ormand Indus., Inc.,* 372 A.2d 204, 210 (Del.Ch. 1976) (noting that the pursuit of a fishing expedition would be improper).

**35.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 571.

**36.** *Thomas & Betts Corp. v. Leviton Mfg. Co. Inc.,* 681 A.2d 1026, 1031 (Del.1996) ("In order to meet that burden of proof, a stockholder must present some credible basis from which the court can infer that waste or mismanagement may have occurred.").

**37.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 567–69. Accord *Brehm v. Eisner,* 746 A.2d 244, 267 n. 75 (Del.2000).

**38.** *Khanna v. Covad Commc'ns Group, Inc.,* 2004 WL 187274 at *6 n. 25 (Del.Ch.). *See also Forsythe v. CIBC Employee Private Equity Fund (U.S.) I.L.P.,* 2005 WL 1653963, at *5 (Del.Ch.) (finding that "[w]hile the [ ] facts fall well short of actually proving wrongdoing,

they do provide a credible basis for inferring mismanagement").

**39.** *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 568.

**40.** *Id.*

**41.** *E.g., White v. Panic,* 783 A.2d 543, 557 n. 54 (Del.2001); *Security First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d at 568; *Mattes v. Checkers Drive–In Rests., Inc.,* 2001 WL 337865, at *5 (Del.Ch.); *Dobler v. Montgomery Cellular Holding Co.,* 2001 WL 1334182, at *3; *Sahagen Satellite Tech. Group, LLC v. Ellipso, Inc.,* 791 A.2d 794, 796 (Del.Ch. 2000).

**42.** The "credible basis" standard is also settled law in those states that look to Delaware law for guidance on matters of corporation law. *See, e.g., Arctic Fin. Corp. v. OTR Express, Inc.,* 272 Kan. 1326, 38 P.3d 701, 703–04 (2002) (looking to *Security First* and *Thomas & Betts* for guidance regarding a books and records inspection under Kansas law); *Towle v. Robinson Springs Corp.,* 168 Vt. 226, 719 A.2d 880, 882 (1998) (in a books and records case under Vermont law, citing *Thomas &*

dard is settled law. Under the doctrine of *stare decisis*, settled law is overruled only "for urgent reasons and upon clear manifestation of error."[43] A review of the cases that have applied the "credible basis" standard refutes Seinfeld's premise that requiring "some evidence" constitutes an insurmountable barrier for stockholders who assert inspection rights under section 220.

Requiring stockholders to establish a "credible basis" for the Court of Chancery to infer possible wrongdoing by presenting "some evidence" has not impeded stockholder inspections. Although many section 220 proceedings have been filed since we decided *Security First* and *Thomas & Betts*, Verizon points out that Seinfeld's case is only the second proceeding in which a plaintiff's demand to investigate wrongdoing was found to be *entirely* without a "credible basis."[44] In contrast, there are a myriad of cases where stockholders have successfully presented "some evidence" to establish a "credible basis" to infer possible mismanagement and thus received some narrowly tailored right of inspection.[45]

*Betts* for the proposition that "[c]laims of mismanagement, however, must be supported by evidence").

**43.** *Oscar George, Inc. v. Potts*, 115 A.2d 479, 481 (Del.1955).

**44.** *See Mattes v. Checkers Drive–In Restaurants, Inc.*, 2001 WL 337865, at *5 (Del.Ch.) (finding that "[t]he evidence at trial did not show 'a credible basis' " to support plaintiff's allegations of corporate wrongdoing when the evidence represented mere curiosity and disagreement with various business decisions and where there was a "substantial delay" in the plaintiff asserting his rights).

**45.** *Sutherland v. Dardanelle Timber Co.*, 2006 WL 1451531, at *8 (Del.Ch.) (finding that the plaintiffs demonstrated a "credible basis" to support allegations of management entrenchment and waste); *Haywood v. Ambase Corp.*, 2005 WL 2130614, at *5–6 (Del.Ch.) (finding "by a preponderance of the evidence, a credible basis" to support allegations of excessive executive compensation); *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2005 WL 1713067, at *9–10 (Del.Ch.) (finding that the plaintiff proved "by a preponderance of the evidence a credible basis" to support allegations of mismanagement based on "sufficiently inconsistent" corporate press releases appearing to contain false or misleading information); *Forsythe v. CIBC Employee Private Equity Fund (U.S.) I.L.P.*, 2005 WL 1653963, at *5 (Del.Ch.) ("finding a credible basis for inferring mismanagement"); *Cohen v. El Paso Corp.*, 2004 WL 2340046, at *2 (Del.Ch.) ("finding that two incidents provide a credible basis upon which [the shareholder] alleges a proper purpose in investigating waste and mismanagement."); *Deephaven Risk Arb. Trading Ltd. v. UnitedGlobalCom, Inc.*, 2004 WL 1945546, at *7 (Del.Ch.) (holding that a "credible basis" was established based on the shareholder's claims); *Marathon Partners, L.P. v. M & F Worldwide Corp.*, 2004 WL 1728604, at *9 (Del.Ch.) (shareholders presented sufficient evidence to support a claim of corporate wrongdoing); *Marmon v. Arbinet–Thexchange, Inc.*, 2004 WL 936512, at *4 (Del.Ch.) (finding a "credible basis" where there was credible testimony presented in support of the various claims of corporate wrongdoing); *Khanna v. Covad Commc'ns Group, Inc.*, 2004 WL 187274, at *6 (Del.Ch.) (holding that the shareholder has shown a "credible basis" by a preponderance of the evidence for his allegations of self-dealing with respect to a number of corporate transactions); *Freund v. Lucent Technologies, Inc.*, 2003 WL 139766, at *3 (Del.Ch.) (finding "some credible basis" for an inspection pursuant to claims of corporate waste and mismanagement); *Magid v. Acceptance Ins. Cos., Inc.*, 2001 WL 1497177, at *3 (Del.Ch.) (holding that expert testimony provided a "credible basis" from which a court could infer that corporate wrongdoing took place.); *Dobler v. Montgomery Cellular Holding Co., Inc.*, 2001 WL 1334182, at *4 (Del.Ch.) (holding that the plaintiff-shareholders demonstrated a "credible basis" for its § 220 claim "[t]hrough the testimony of their two trial witnesses and the documents introduced as evidence" regarding the actions of the corporation's board of directors, through evidence of suspicious expense figures); *Saito v. McKesson HBOC, Inc.*, 2001 WL 818173, at *4 (Del.Ch.), *aff'd in*

We remain convinced that the rights of stockholders and the interests of the corporation in a section 220 proceeding are properly balanced by requiring a stockholder to show "some evidence of *possible* mismanagement as would warrant further investigation." [46] The "credible basis" standard maximizes stockholder value by limiting the range of permitted stockholder inspections to those that might have merit.[47] Accordingly, our holdings in *Security First* and *Thomas & Betts* are ratified and reaffirmed.

### Conclusion

The judgment of the Court of Chancery is affirmed.

---

part, rev'd in part on other grounds, 806 A.2d 113 (Del.2002) (finding a "credible basis" for wrongdoing where the corporation restated its financials and federal authorities commenced criminal proceedings); *Carapico v. Phila. Stock Exch. Inc.*, 791 A.2d 787, 792 (Del.Ch.2000) (finding a "credible basis" to support an investigation of corporate mismanagement where misconduct was identified in an SEC Order and plaintiff produced testimony showing a credible basis to suspect mismanagement); *Sahagen Satellite Tech. Group, LLC v. Ellipso, Inc.*, 791 A.2d 794, 796–99 (Del.Ch.2000) (granting limited relief under the credible basis standard to allow investigation of documents related to a corporate computer purchase).

46. *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 568.

47. *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d at 1031. *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 571.