**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4279-17T3

CITY OF BIRMINGHAM RELIEF
AND RETIREMENT SYSTEM,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

EXXONMOBIL CORPORATION,

      Defendant-Respondent/
      Cross-Appellant.

Argued March 18, 2019 – Decided May 6, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000003-18.

Judith S. Scolnick argued the cause for appellant /cross-respondent (Scott + Scott, attorneys; Judith S. Scolnick, Thomas L. Laughlin, IV (Scott + Scott) of the New York bar, admitted pro hac vice, and Rhiana L. Schwartz (Scott + Scott) of the New York bar, admitted pro hac vice, on the briefs).

Daniel J. Kramer (Paul, Weiss, Rifkind, Wharton & Garrison, LLP) of the New York bar, admitted pro hac vice, argued the cause for respondent/cross-appellant (Day Pitney LLP and Paul Weiss Rifkind Wharton & Garrison, LLP, attorneys; Daniel J. Toal (Paul, Weiss, Rifkind, Wharton & Garrison, LLP) of the New York bar, admitted pro hac vice, Jonathan H. Hurwitz (Paul, Weiss, Rifkind, Wharton & Garrison, LLP) of the New York bar, admitted pro hac vice, Daniel J. Kramer, and Theodore V. Wells, Jr., of counsel and on the brief; Anthony J. Marchetta, Dennis R. LaFiura, and Elizabeth J. Sher, on the briefs).

PER CURIAM

Plaintiff City of Birmingham Relief and Retirement System is a beneficial owner of approximately 60,000 shares of defendant ExxonMobil Corporation's common stock, held in street name through a brokerage firm. Plaintiff is not a shareholder of record nor a holder of trust certificates. After ExxonMobil denied plaintiff's written demands to inspect its books and records, plaintiff filed a summary action in the Chancery Division seeking a judgment permitting inspection.

Plaintiff's verified complaint alleged violations of statutory and common law rights of inspection. Plaintiff alleged "upon information and belief" that ExxonMobil participated in a decades-long surreptitious practice of funding "outside groups" to discredit the scientific community's opinions about climate change. Plaintiff further claimed ExxonMobil's internal scientists nonetheless

2

shared the view "that human-influenced global climate change was real and required a dramatic reduction in the dependence of [sic] fossil fuels."

Accordingly, plaintiff sought "to investigate evidence that Exxon[Mobil]'s management violated state and federal laws by (i) fraudulently funding efforts to deceive the public and government about the risks of global climate change, and (ii) misleading investors about how such risks could harm the [c]ompany." Plaintiff also sought inspection to "potentially" file a shareholder derivative lawsuit.

To support its purpose for inspection, plaintiff's complaint referenced New York Times and Wall Street Journal newspaper articles, reporting the Securities Exchange Commission and New York State Attorney General had commenced separate investigations concerning ExxonMobil's purported wrongdoing regarding "global climate change." Plaintiff's complaint also briefly mentioned similar investigations commenced by the Attorneys General of Massachusetts, California and the Virgin Islands, along with a referral by the Department of Justice to the Federal Bureau of Investigation; and findings by trial courts in Massachusetts and New York compelling ExxonMobil to comply with subpoenas issued by the respective Attorneys General.

Claiming recent revisions to the New Jersey Business Corporation Act barred demand-excused lawsuits, ExxonMobil asked plaintiff to dismiss its action, but plaintiff declined. Thereafter, ExxonMobil filed an answer and asserted several defenses, including lack of standing and a proper purpose for inspection. ExxonMobil also contended plaintiff's demand was overly broad.

Following issuance of an order to show cause (OTSC), both parties filed briefs. Among other things, plaintiff appended an academic article, which generally concluded ExxonMobil "misled non-scientific audiences about climate science[.]" Notably, neither party requested a plenary hearing, as permitted under the OTSC. Following oral argument on April 20, 2018, the trial judge rendered an oral decision, denying plaintiff's application, and entered a memorializing order on May 4, 2018.

Initially, the trial judge determined plaintiff's status as a beneficial owner of ExxonMobil stock did not negate standing to inspect the company's books and records under the common law. The judge did not, however, consider plaintiff's statutory right of inspection.[1]

_____

[1] See N.J.S.A. 14A:5-28(4), which provides in pertinent part:

> Nothing herein contained shall impair the power of any court, upon proof by a shareholder of proper purpose,

Secondly, the trial judge rejected ExxonMobil's argument that, because plaintiff's purpose for seeking inspection was premised on a potential derivative shareholder lawsuit, its complaint should be dismissed for failure to make the statutorily-mandated written demand on the company.[2]  Instead, the judge determined a potential derivative action was only one aspect of plaintiff's application.

However, in considering whether plaintiff asserted a proper purpose for inspection, the judge found "the crux of the request" was "an interest in climate change[,]" which is "a rather amorphous concept[.]"  The judge elaborated that plaintiff's request was "certainly not as specific as the request that was . . . made []in Cain [v. Merck & Co., 415 N.J. Super. 319 (App. Div. 2010)]."

As the trial judge recognized, in Cain, we limited inspection of the defendant company's minutes to its drug trial, but rejected the plaintiffs'

---

irrespective of the period of time during which the shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation.

[2]  See N.J.S.A. 14A:3-6.3 ("No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action . . . .").

application to the extent they sought "to explore unsubstantiated allegations of general mismanagement." Id. at 323. Accordingly, the judge in the present matter found plaintiff's general reference to "climate change" was not "a specific enough request [when compared with a drug trial] . . . to qualify as a proper purpose."

Finally, the judge determined plaintiff failed to present sufficient credible evidence to support its application pursuant to the standards we recognized in Cain. In particular, the judge here rejected plaintiff's evidence, including the researcher's opinions and various governmental investigations, as "nothing more than allegations[,]" which were inadmissible in court proceedings. Having assumed arguendo that the evidence was admissible, the judge nonetheless determined plaintiff's "evidence f[ell] woefully short" of meeting the preponderance of the evidence standard required under Cain. See id. at 332.

Plaintiff now appeals, renewing its arguments that it asserted a proper purpose for inspection, and presented sufficient credible evidence to support its inspection demand. Although plaintiff's purpose for seeking inspection might have been proper, we reject its contention that it presented reliable credible evidence to support its demand. We therefore affirm on that basis.

We begin our analysis by recognizing our well-established standard of review. We will not disturb the factual findings and legal conclusions of a trial judge unless we are convinced those findings and conclusions "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010) (internal quotation marks omitted) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Further, we afford substantial deference to the trial judge's discretion on evidentiary rulings, and reverse only where the judge's ruling was "so wide of the mark that a manifest denial of justice resulted." State v. J.A.C., 210 N.J. 281, 295 (2012) (citation omitted); see also Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999). "However, '[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Tractenberg, 416 N.J. Super. at 365 (alteration in original) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Rule 4:67-1(a) permits summary proceedings in "all actions in which the court is permitted by rule or by statute to proceed in a summary manner . . . ."

A-4279-17T3

As noted above, N.J.S.A. 14A:5-28 governs a shareholder's right to inspect a company's books and records. Pursuant to subsection (4), "[i]n any action for inspection the court may proceed summarily."

Actions brought in a "summary manner" are distinguishable from summary judgment actions because in a summary action, the court makes findings of fact and accords no favorable inferences to the action's opponent. O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172 (App. Div. 1997), appeal dismissed, 157 N.J. 537 (1998). If the court is "satisfied with the sufficiency of the application, [it] shall order defendant to show cause why final judgment should not be rendered for the relief sought." Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 378 (App. Div. 2003). (alteration in original) (internal quotation marks omitted) (quoting R. 4:67-2(a)).

Further, summary actions are specifically designed to be expeditious and avoid plenary hearings. Under Rule 4:67-5,

> [t]he court shall try the action on the return day, or on such short day as it fixes . . . [i]f . . . the affidavits show palpably that there is no genuine issue as to any material fact[.] . . . If any party objects to such a trial and there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue, and render final judgment. At the hearing or on motion at any stage of the action, the court for good cause shown may order the action to proceed as in a plenary action . . . .

8

Consequently, judges deciding rights of inspection on summary proceedings have broad discretion in determining the genuine nature of the factual dispute and whether the issue may merit a plenary hearing. See Tractenberg, 416 N.J. Super. at 365 (holding that a judge properly utilized a summary proceeding to determine whether facts supported the claim that the attorney-client privilege or attorney work product protected the release of certain documents under the Open Public Records Act). That is especially so where, as here, the parties did not request an evidentiary hearing to resolve their competing factual contentions. Instead, pursuant to the parties' request, the judge decided the matter based on the submissions of the parties, including certifications and exhibits.

Applying those principles here, we find that the trial judge properly decided the case based on the evidence produced and correctly determined that information fell far short of the standard to prove a proper purpose for inspection that we recognized in Cain.

In Cain, we looked to Delaware's "well-developed jurisprudence" in analyzing corporate law issues, explaining that shareholders must establish "a 'credible basis' from which [the court] can infer there is possible mismanagement that would warrant further investigation." 415 N.J. Super. at 332 (alteration in

9

original) (quoting <u>Seinfeld v. Verizon Commc'ns Inc.</u>, 909 A.2d 117, 118, 123 (Del. 2006)). We further observed, "Such a showing must be made 'by a preponderance of the evidence' and 'may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing.' Mere 'suspicion' or 'curiosity' is not enough." <u>Ibid.</u> (citations omitted). As we recently noted in <u>Feuer v. Merck & Co.</u>, 455 N.J. Super. 69, 83 (App. Div.), <u>certif. granted</u>, 236 N.J. 227 (2018), N.J.S.A. 14A:5-28 was not intended to be a "discovery" device.

Here, we agree with the trial judge that plaintiff failed to establish proof of a proper purpose to support its inspection request. While we have acknowledged a stockholder's intent to investigate mismanagement or wrongdoing may be a proper purpose, we have likewise required the stockholder to present "some evidence to establish a credible basis from which [the court] can infer there is possible mismanagement that would warrant further investigation." <u>Cain</u>, 415 N.J. Super at 332 (alteration in original) (internal quotation marks omitted) (quoting <u>Seinfeld</u>, 909 A.2d at 118, 123).

Moreover, "[a]n inspection to investigate possible wrongdoing where there is no 'credible basis,' is a license for 'fishing expeditions' and thus adverse to the interests of the corporation." <u>Ibid.</u> (quoting <u>Seinfeld</u>, 909 A.2d at 123).

A-4279-17T3

As we recognized in <u>Cain</u>, while under our common law, a shareholder was not required to prove actual mismanagement, the shareholder "generally came forward with facts to substantiate the concern about mismanagement." <u>Id.</u> at 333. We expressed our rationale as follows:

> The requirement that the stockholder come forward with specific and supported, credible allegations of mismanagement before allowing an inspection recognizes the burden such requests place upon a corporation, including large international corporations. In an early case denying a stockholder's request for inspection of records in order to explore an unsupported allegation of mismanagement against a corporation with an international business, the former Supreme Court wrote:
>
> > The fact that [plaintiff's] holdings of stock are small compared with the whole amount outstanding is of course of no importance. It is the duty of the courts in a proper case to protect minority stockholders, but the power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation whose operations are so extensive in two continents that the court ought to exercise the power with the greatest care and only when a case is presented which indicates not only a bona fide desire to safeguard the interests of all stockholders but a probability that the interests of all will be served by the proposed investigation.

[Id. at 333-34 (alteration in original)
(quoting In re De Vengoechea, 86 N.J.L.
35, 37 (Sup. Ct. 1914)).]

Against that legal backdrop, even assuming arguendo that plaintiff's desire to investigate ExxonMobil's purported mismanagement and wrongdoing constituted a proper purpose for inspection, we agree with the trial judge that plaintiff provided insufficient evidence to demonstrate its general allegations are credible.

In particular, plaintiff's reliance on negative newspaper and research articles, and state and federal investigations are all grounded in hearsay and, as such, the statements contained therein are inadmissible in a summary proceeding. See N.J.R.E. 101(a)(2) (mandating application of the rules of evidence "in all proceedings, civil or criminal, conducted by or under the supervision of a court"); see also N.J.R.E. 802 ("Hearsay is not admissible except as provided by the[ Rules of Evidence] or by other law."); In re Venezia, 191 N.J. 259, 278 n.7 (2007) (recognizing newspaper articles are "inadmissible as hearsay"); Samuel Sheitelman, Inc. v. Hoffman, 106 N.J. Super. 353, 356 (App. Div. 1969) (recognizing the "general rule" that "newspapers or newspaper articles are not ordinarily admissible as evidence of the facts stated therein").

Indeed, plaintiff acknowledges before us, as it did before the trial judge, that its proffered evidence is inadmissible in a judicial proceeding. Rather, plaintiff contends "the [credible basis] standard can be satisfied by documents, logic, testimony, circumstantial evidence, credible hearsay or other proof." To support its argument, plaintiff primarily relies on various Delaware reported and unreported decisions, which are not binding on us. We only note that the thread of published Delaware cases cited by plaintiff does not establish a clear willingness to permit inadmissible hearsay evidence to satisfy the credible basis standard. In each case permitting inspection, either the corporation did not contest that plaintiff had a proper purpose in seeking inspection or the shareholder presented more than newspaper articles or academic studies, such as internal documents previously obtained from the corporation. To permit shareholders to rely on inadmissible evidence to establish a credible basis would effectively eliminate their burden of proof entirely. As the Delaware Supreme Court observed:

> Although the threshold for a stockholder in [a books and records] proceeding is not insubstantial, the "credible basis" standard sets the lowest possible burden of proof. The only way to reduce the burden of proof further would be to eliminate any requirement that a stockholder show some evidence of possible wrongdoing. That would be tantamount to permitting inspection based on the "mere suspicion" standard that

13

[the plaintiff] advances . . . . However, such a standard has been repeatedly rejected as a basis to justify the enterprise cost of an inspection.

[Seinfeld, 909 A.2d at 123 (emphasis added) (footnotes omitted).]

Moreover, plaintiff's reliance on Cain is misplaced. Plaintiff claims we permitted inspection in Cain where, like here, the plaintiffs' demand was supported by inadmissible evidence. Unlike the present case, however, the corporation in Cain conceded inspection for the limited purpose of investigating the propriety of a single clinical trial. 415 N.J. Super. at 334-35. As noted above, we limited the plaintiffs' inspection to that trial, refusing to permit the plaintiffs "to conduct a fishing expedition based on general and unsupported allegations of mismanagement." Id. at 332.

In sum, in the present case, plaintiff relies on news articles, research articles, and pending investigations, all of which are replete with hearsay. Accordingly that evidence fails to provide a sufficiently reliable basis to warrant inspection of ExxonMobil's books and records. See James v. Ruiz, 440 N.J. Super. 45, 59 (App. Div. 2015) (recognizing the "long-standing policy" of our courts "disfavor[s] the admission of hearsay" because it is "presumptively deemed to be 'untrustworthy and unreliable'"). Because we conclude plaintiff's general allegations constitute inadmissible hearsay and fall far short of

14

establishing a proper purpose, we discern no error in the judge's ultimate decision to exclude the proffered evidence and deny inspection.

Finally, we note ExxonMobil has filed what it terms a "contingent cross-appeal" to preserve its claims in the event plaintiff's claims on appeal are successful. In doing so, ExxonMobil contends the trial judge "erroneously decided, in dictum" that plaintiff as a beneficial shareholder had standing to assert inspection rights, and plaintiff's purpose for inspection was to determine whether to submit a litigation demand. Because we have concluded plaintiff's claims before us lack merit, we need not reach ExxonMobil's arguments, and instead dismiss its contingent cross-appeal as moot.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We note, however, that in deciding standing, the trial judge failed to consider N.J.S.A. 14A:5-28(4), which by its plain terms appears to apply to "a shareholder of record" and not beneficial owners like plaintiff. Further, in deciding standing under the common law, the judge cited our former Supreme Court's opinion, Mateer v. New Jersey Telephone Co., 5 N.J. Misc. 261 (1927), but nonetheless determined O'Connor v. International Silver Co., 68 N.J. Eq. 67 (1904), decided two decades earlier by a chancery court, controlled. O'Connor, however, did not address a shareholder's rights to inspect the books and records of the corporation, but rather decided the distinct issue as to whether a shareholder had equitable standing based on its beneficial ownership of stock, to prevent corporate officers and directors from voting at a shareholders' meeting. 68 N.J. Eq. at 68. Conversely, the Court in Mateer held, "The relator, to have a proper status, must appear as a stockholder of record on the books of the company." 5 N.J. Misc. at 262.