# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERTA ANN K.W. WONG LEUNG REVOCABLE TRUST U/A DATED 03/09/2018, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-1251-BWD |
| AMAZON.COM, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: October 8, 2024
Date Decided: October 24, 2024

Samuel L. Closic, Seth T. Ford, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Brian J. Robbins, Stephen J. Oddo, Gregory E. Del Gaizo, Michael J. Nicoud, Eric M. Carrino, ROBBINS LLP, San Diego, California; Daniel B. Rehns, Scott Jacobsen, HACH ROSE SCHIRRIPA & CHEVERIE, New York, New York; *Counsel for Plaintiff Roberta Ann K.W. Wong Leung Revocable Trust U/A Dated 3/09/2018*

Garrett B. Moritz, Dylan T. Mockensturm, Benjamin M. Whitney, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; William Savitt, Anitha Reddy, Adam M. Gogolak, Alexis J. Abboud, WACHTELL, LIPTON, ROSEN & KATZ, New York, New York; *Counsel for Defendant Amazon.com, Inc.*

**WILL, Vice Chancellor**

This decision concerns exceptions from a Final Report of a Magistrate in Chancery. The Magistrate concluded that the stockholder plaintiff failed to demonstrate a proper purpose to inspect Amazon.com, Inc.'s books and records. After a de novo review, I reach the same conclusion. The plaintiff's stated purpose is so overbroad and imprecise that it is facially improper.

## I. FACTUAL BACKGROUND

The relevant facts are found in the Magistrate's Final Report dated May 1, 2024.[1] Unless otherwise noted, the below summary is from the Final Report, the trial record, and a related proceeding before this court.[2]

### A. Amazon's Business

Amazon.com, Inc. is a Delaware corporation with its principal executive offices in Seattle, Washington.[3] It is a multinational technology enterprise focused on e-commerce, cloud computing, and digital streaming.[4] In 2023, Amazon's

---

[1] Post-trial Final Report (Dkt. 57) ("Report").

[2] Joint exhibits submitted by the parties are cited as "JX __." The related proceeding was resolved by a June 1, 2022 post-trial decision. *See Okla. Firefighters Pension & Ret. Sys. v. Amazon.com, Inc.*, 2022 WL 1760618 (Del. Ch. June 1, 2022).

[3] Report 2.

[4] JX 81 (Amazon.com, Inc. 2023 Form 10-K) 3.

revenues were roughly $575 billion.[5]  Its current market capitalization, according to public sources, is approximately $1.97 trillion.[6]

Amazon earns revenue primarily by selling a vast range of products and services.[7]  Its "flywheel" business strategy centers on improving the customer experience to drive traffic to its platform.[8]  This model involves Amazon's many business units working in tandem.[9]

Amazon's consumer-facing business offers "hundreds of millions of unique products . . . sold by [Amazon] and by third parties across dozens of product categories . . . through [Amazon's] websites, mobile apps, Alexa, devices, streaming, and [physical] stores."[10]  Amazon also sells and manufactures electronic devices, such as the Kindle and Alexa.[11]  It offers subscription-based services for shipping

---

[5] Report 2; JX 81 at 24.

[6] *See Amazon*, Forbes, https//www.forbes.com/companies/amazon (last visited October 22, 2024).

[7] JX 81 at 20, 42-44; *see* Report 2.

[8] *See* JX 113 ¶ 9.

[9] *See e.g.*, *id.* ¶¶ 223-26 (explaining that Amazon couples its shipping services and its digital entertainment offerings).

[10] JX 81 at 3.

[11] *Id.*

and digital entertainment.[12] Customer orders are filled through dense North American and international fulfillment networks.[13]

Separately, Amazon provides sellers programs to "grow their businesses, sell their products in [Amazon] stores, and fulfill orders using [Amazon] services."[14] These tools include pricing, certifications, advertising, and subscription services. Amazon earns fees for these programs through different fee structures.[15]

Amazon Web Services (AWS) provides a cloud-based computing platform with hundreds of services for developers and enterprises of all sizes. It "offers a broad set of on-demand technology services, including computer, storage, database, analytics, and machine learning, and other services."[16]

Amazon has dozens of subsidiaries with diverse operating businesses, including Whole Foods Market, Audible, Diapers.com, MGM Holdings Inc., Zappos, Ring, and Zoox.[17]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] JX 13 at 406-14.

## B. Anti-Competitive Scrutiny

The scale and success of Amazon has led to scrutiny over whether it exploits its dominant market position with anticompetitive conduct. Amazon has been subject to multiple proceedings by different state actors over its compliance with laws around the world. These proceedings range from a 2019 investigation into compliance with European Union competition laws to a 2022 lawsuit over alleged violations of Washington state statutes.[18]

A more recent notable matter was brought by the Federal Trade Commission (FTC) in September 2023. The FTC, joined by Attorneys General of seventeen states (and later, Puerto Rico and an eighteenth state), sued Amazon in the United States District Court for the Western District of Washington over alleged anticompetitive practices (the "FTC Complaint").[19] The FTC Complaint outlines facts uncovered during a four-year investigation, including the production of millions of documents and testimony from 29 Amazon witnesses.[20]

## C. Delaware Section 220 Litigation

Scrutiny over Amazon's purported anticompetitive practices has twice prompted books and records suits in this court.

---

[18] *See* Report 2-3, 7-11.

[19] *Id.* at 9-10; JX 39; JX 113.

[20] *See* JX 113 at ¶ 432; *see also* JX 69 at 32; JX 95 at 3.

First, in *Oklahoma Firefighters Pension & Retirement System v. Amazon.com, Inc.*, an Amazon stockholder sued for books and records to investigate potential mismanagement concerning the company's compliance with United States antitrust law.[21] In June 2022, this court denied the stockholder's demand for materials beyond what Amazon had agreed to produce. The stockholder offered evidence of pending or closed investigations to demonstrate potential wrongdoing, which was found insufficient.[22] The stockholder's attempt to offer additional evidence about an Italian regulator's fine was rejected since the demand only raised compliance with domestic laws.[23]

In October 2023, after the FTC Complaint was filed, the Roberta Ann K.W. Wong Leung Revocable Trust U/A Dated 03/09/2018 (the "Trust")—the plaintiff here—served a separate books and records demand on Amazon.[24] As with the prior demand, the Trust's stated purpose for inspection was "to investigate potential corporate mismanagement, wrongdoing, and waste by fiduciaries of [Amazon]" regarding anticompetitive conduct.[25] Although Amazon maintained that the demand

---

[21] Report 5 (citing *Amazon.com*, 2022 WL 1760618, at *1).

[22] *Amazon.com*, 2022 WL 1760618, at *6.

[23] *Id.* at *9 ("If the plaintiff wished to investigate potential wrongdoing related to violations of Italian law, it should have served a demand making that explicit.").

[24] JX 53 ("Demand").

[25] *Id.* at 1.

was deficient in terms of purpose and scope, it offered to discuss a production of materials.[26]  Amazon explained that any production would be conditioned upon a confidentiality agreement with a jurisdictional use limitation.[27]  The Trust responded that it was "not going to agree to an exclusive forum provision."[28]  The present litigation followed.

## D.    The Final Report

In December 2023, the Trust filed this action under 8 *Del. C.* § 220.[29]  It alleged that its demand was proper and that Amazon had raised improper objections and conditions to any potential production.

A trial on a paper record was held before Magistrate David in April 2024. After trial, she issued a thorough Final Report recommending that judgment be entered for Amazon.[30]  She explained that the Trust's proffered evidence "primarily concern[ed] certain government investigations and litigation," and made careful factual determinations of the status or outcome of each.[31]  Citing to this court's June 2022 *Amazon.com* decision, Magistrate David confirmed that "Delaware courts have

---

[26] JX 60 at 2-3.

[27] *Id.* at 3; JX 61.

[28] JX 58 at 1.

[29] Dkt. 1.

[30] Report 1; *see* Ct. Ch. R. 144(a).

[31] Report 2-4, 7-10, 15 (quoting *Amazon.com*, 2022 WL 1760618, at *6).

routinely looked to some additional evidence beyond ongoing inquiries or litigation to find that a plaintiff has met its burden."[32]   She concluded that the cited developments post-*Amazon.com* lacked the sort of "plus factor" beyond mere inquiries that could satisfy the credible basis standard.[33]   She thus held that the Trust failed to "present some evidence to suggest a credible basis from which a court can infer that . . . wrongdoing may have occurred."[34]

The Trust took exception to the Final Report.[35]   The matter was assigned to me to resolve those exceptions.  The exceptions were fully briefed and argued on July 18, 2024.[36]   On October 8, the Trust filed a letter to supplement its brief because a motion to dismiss the FTC Complaint had been granted in part and denied in part.[37]

## II.   ANALYSIS

The Court of Chancery applies a de novo standard of review when resolving exceptions to a Magistrate's final report.[38]   The exceptions are reviewed "on the record before the [Magistrate in Chancery], unless the Court determines otherwise

---

[32] *Id.* at 16 (citing *Amazon.com, Inc.*, 2022 WL 1760618, at *7).

[33] *Id.* at 21-22.

[34] *Id.* at 14-15 (quoting *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *10 (Del. Ch. Nov. 24, 2020)).

[35] Dkt. 60.

[36] *See* Dkt. 75.

[37] Dkt. 76.

[38] *See* Ct. Ch. R. 144(a); *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999) (citing *In re Estate of McNatt*, 1999 WL 135240, at *2 (Del. Ch. Feb. 25, 1999)).

for good cause shown."[39]  The only additional evidence offered is the federal court's decision on the FTC Complaint.  As discussed below, I need not consider it.

Section 220 of the Delaware General Corporation Law codifies a "qualified" right for a stockholder to inspect corporate books and records.[40]  Among other statutory requirements, a stockholder's inspection demand must state a "proper purpose" that is "reasonably related to such person's interest as a stockholder."[41]

In Section 220 litigation, the "stockholder has the burden of showing, by a preponderance of the evidence, a proper purpose entitling the stockholder to an inspection of every item sought."[42]  Magistrate David determined that the Trust failed to meet that burden.  I agree.

## A.    Credible Basis Standard

"[A] stockholder seeking to investigate wrongdoing must show, by a preponderance of the evidence, a credible basis from which the court can infer there is 'possible mismanagement as would warrant further investigation.'"[43]  "Although not an insubstantial threshold, the credible basis standard is the 'lowest possible

---

[39] Ct. Ch. R. 144(e).

[40] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 119 (Del. 2006); *see* 8 *Del. C.* § 220.

[41] 8 *Del. C.* § 220(b).

[42] *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1028 (Del. 1996).

[43] *AmerisourceBergen Corp. v. Lebanon Cty. Emps.' Ret. Fund*, 243 A.3d 417, 426 (Del. 2020) (quoting *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 568 (Del. 1997)).

burden of proof.'"[44]  As Magistrate David properly explained, the standard can be met by a "credible showing, through documents, logic, testimony, or otherwise, that there are legitimate issues of wrongdoing."[45]  She found that the Trust had failed to satisfy it.

In taking exception to that ruling, the Trust contends that it met its burden by relying on the 150-page FTC Complaint, which includes quotes from Amazon documents and witnesses, plus other evidence.[46]  It asserts that the Magistrate wrongly discounted the FTC Complaint as "plead[ing] allegations, not evidence."[47]  In support of this position, the Trust cites the Court of Chancery's decision in *In re UnitedHealth Group Section 220 Litigation*, which found that a complaint filed by a government agency after a multi-year investigation satisfied the credible basis standard.[48]  The court in *UnitedHealth* explained that "even if a complaint alone is insufficient, [a d]efendant cannot escape the testimony and documents that demonstrate a credible basis for this Court to infer possible wrongdoing or mismanagement simply because they are referenced in a complaint."[49]

---

[44] *Id.* (quoting *Seinfeld*, 909 A.2d at 123); *see also* Report 15.

[45] Report 15 (quoting *AmerisourceBergen Corp.*, 243 A.3d 426).

[46] Pl.'s Opening Br. in Support of Notice of Exceptions to Magistrate's Post-trial Final Report (Dkt. 64) ("Opening Br.") 32-39.

[47] *Id.* at 4.

[48] 2018 WL 1110849, at *1 (Del. Ch. Feb. 28, 2018).

[49] *Id.* at *7.

The Magistrate distinguished *UnitedHealth* based on the level of detail in the agency's complaint at issue there versus in the FTC Complaint cited here.[50]  This analysis is the focus of the Trust's exceptions.  The Trust asserts that the Final Report rests on "the untenable position that stockholders be required to obtain documentary evidence of wrongdoing from plenary proceedings brought by regulators or other means, just in order to begin an investigation into such wrongdoing."[51]

I do not read the well-reasoned Final Report to suggest that a plaintiff must present the underlying documentary evidence cited in a regulator's pleading to satisfy the credible basis standard.  Rather, it correctly observed that bare allegations alone may not be enough if they are not "supported by additional evidence."[52]  It explicitly noted that "[a] stockholder need not show that corporate wrongdoing or mismanagement has occurred in fact . . . ."[53]

Yet I need not resolve whether the FTC Complaint supports a credible basis to suspect possible wrongdoing.  Nor must I consider whether the FTC Complaint plus other evidence offered satisfies the Trust's burden.  There is a more fundamental

---

[50] Report 18-19 ("Unlike the government complaint[] in *UnitedHealth Group* . . . the FTC Complaint does not extensively quote testimony or attach the documents on which it relies, so the Court cannot evaluate the underlying evidence 'to determine if there exists an inference of wrongdoing.'" (quoting *UnitedHealth*, 2018 WL 1110849, at *7 n.92).

[51] Opening Br. 40

[52] Report 19.

[53] *Id.* at 15 (quoting *AmerisourceBergen*, 243 A.3d at 426).

10

problem with the Trust's demand: the scope of its stated purpose is facially improper. I turn to that matter next.

## B.    The Trust's Purpose

The propriety of a stockholder's purpose is the "paramount factor in determining whether [it] is entitled to inspection of corporate books records."[54] The desire to investigate potential wrongdoing or mismanagement has long been recognized as a proper purpose.[55] Still, "more than a general statement is required for the [c]ourt to determine the propriety of a demand."[56] The stockholder must identify the matter it seeks to investigate, supported by "specific and credible allegations sufficient to warrant a suspicion of waste and mismanagement."[57] "Mere curiosity or a desire for a fishing expedition will not suffice."[58]

---

[54] *CM & M Grp., Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982).

[55] *Seinfeld*, 909 A.2d at 121 ("It is well established that a stockholder's desire to investigate wrongdoing or mismanagement is a 'proper purpose.'" (quoting *Nodana Petrol. Corp. v. State ex rel. Brennan*, 123 A.2d 243, 246 (Del. 1956))).

[56] *Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 678 (Del. Ch. 1978); *see also Seinfeld*, 909 A.2d at 122 ("A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief." (quoting *Helmsman Mgmt. Servs. v. A & S Consultants*, 525 A.2d 160, 166 (Del. Ch. 1987))).

[57] *Thomas & Betts*, 681 A.2d at 1031.

[58] *Sec. First Corp.*, 687 A.2d at 568; *see also City of Westland Police & Fire Ret. Sys. v. Axcelis Techs.*, 1 A.3d 281 (Del. 2010) (explaining that Delaware law "safeguard[s] the corporation's right to deny requests for inspection based solely upon suspicion or curiosity").

The Trust's demand runs afoul of this basic requirement because its stated purpose is astoundingly broad. The Trust wishes to investigate whether "Amazon's fiduciaries have authorized or allowed the Company [to] take unlawful advantage of [its] dominant position to engage in anticompetitive practices, leading to U.S. and international regulatory scrutiny, lawsuits, and fines."[59] That is, its purpose concerns *any* possible anticompetitive conduct by a global conglomerate at *any* time *anywhere* in the world.

The boundlessness of this purpose is clear from the Trust's scattershot allegations of wrongdoing, including:

- Amazon's sales of an Amazon-branded car trunk organizer that competed with a third-party trunk organizer in October 2019;[60]

- Amazon's sale of discount diapers and personal care products through "Amazon Mom" to compete with a company called Quidsi in 2010;[61]

- The design of Amazon's website, which does not distinguish between its retail and marketplace businesses;[62]

- The size of Amazon's market share relative to other online superstores as a "barrier[] to entry and to competition";[63]

---

[59] Demand 1.

[60] *Id.* at 3.

[61] *Id.* at 5-6.

[62] *Id.* at 7.

[63] *Id.* at 10.

- Amazon's favoring of "Prime Badge" sellers in search functions;[64] and

- Amazon's use of an algorithm called "Project Nessie" that purportedly involves price raises.[65]

The Trust's reliance on government inquiries to support its demand is equally haphazard. The cited proceedings are dissimilar in terms of time, jurisdiction, and subject matter. For example:

- In September 2019, the European Commission—the European Union's executive body—announced that a formal investigation of "agreements between Amazon and its marketplace sellers" and how "Amazon use[s] third-party seller data."[66]

- In July 2020, former Amazon CEO Jeff Bezos faced questioning from the Judiciary Committee of the United States House of Representatives on topics including "the frequency with which [Amazon] changes its policies," "the increasing cut of sales that Amazon takes from small merchants," and "aggressive price-cutting practices designed to undercut an emerging rival."[67]

- In December 2021, the Italian Competition Authority—Italy's antitrust regulator, imposed a $1.3 billion fine "for infringing on [European Union] competition rules."[68]

- In January 2022, the Attorney General of the State of Washington filed claims in Washington state court alleging that the "Sold by Amazon" program violated the Washington Consumer Protection Act.[69]

---

[64] *Id.* at 14-15.

[65] *Id.* at 15-16.

[66] *Id.* at 2.

[67] *Id.* at 4-5.

[68] *Id.* at 18; Report 4 (quoting JX 24 at 4).

[69] Demand 6-7; Report 7 (citing JX 15 at 1; JX 17 ¶¶ 30-35).

- In September 2022, the Attorney General of the State of California filed claims in California state court accusing Amazon of violating California's unfair competition and antitrust laws.[70]

- In June 2023, the FTC brought a complaint against Amazon for "trick[ing] consumers into signing up for Prime memberships and preventing the cancellation of such memberships."[71]

These disjointed allegations leave me unable to discern the potential wrongdoing the Trust seeks to investigate. But they make the indiscriminateness of the Trust's demand obvious. Whether the Trust has put forward sufficient evidence to satisfy the credible basis standard is meaningless when it failed to articulate a lucid purpose in the first place.

*        *        *

Delaware courts strive to carefully balance a stockholder's inspection right against legitimate corporate interests.[72] To maintain this equilibrium, Delaware courts "closely examine any Section 220 demand to 'prevent possible abuse of the shareholder's right of inspection.'"[73] The Trust's sweepingly broad demand amounts to the sort of abuse that this court cannot bless. Section 220 does not permit

---

[70] Demand 6-7; Report 7-8 (citing JX 19 ¶¶ 214-22).

[71] Demand 14 n.10.

[72] *See CM &M Grp.*, 453 A.2d at 793.

[73] *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 164 (Del. Ch. 2006) (quoting *CM & M Grp.*, 453 A.2d at 793-94).

14

stockholders to act as inquisitors, searching a corporation's documents for any hint of transgression.

## III. CONCLUSION

The Trust's exceptions are overruled. The Magistrate's determination that the Trust failed to state a proper purpose is approved. And the recommendation in the Final Report that judgment be entered for Amazon is adopted.