COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 28, 2025

Michael J. Barry
Christine M. Mackintosh
Rebecca A. Musarra
William G. Passannante II
Demetrius M. Davis
GRANT & EISENHOFER P.A.
123 S. Justison Street, 7th Floor
Wilmington, DE 19801

David J. Teklits
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19899

> Re: *Operating Engineers Construction Industry and Miscellaneous Pension Fund v. Pioneer Natural Resources Company,* C.A. No. 2024-0101-SEM

Dear Counsel:

This letter opinion resolves Plaintiff's exceptions to Senior Magistrate Molina's Final Report dated January 16, 2025 (the "Final Report").[1]

## I.      BACKGROUND

I have reviewed this matter *de novo*, as I must,[2] but I adopt Senior Magistrate Molina's clear and thorough statement of the factual background.[3]  The abbreviated version of the facts is that Scott Sheffield founded Defendant Pioneer Natural Resources in the late 1990s and was its CEO through 2023.[4]  Pioneer was a Delaware

---

[1] C.A. No. 2024-0101-SEM, Docket ("Dkt.") 51 ("Final Report").  This decision cites to: docket items by Dkt. number; the Joint Pre-Trial Stipulation and Order ("PTO"), Dkt. 40; and trial exhibits by JX number.

[2] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[3] *See* Final Report at 4:11–16:8.

[4] PTO ¶¶ 18, 61.

corporation that explored for, developed, and produced oil, natural gas liquids, and gas in West Texas.[5] On October 10, 2023, ExxonMobil and Pioneer executed a merger agreement, under which ExxonMobil agreed to acquire Pioneer in an all-stock transaction valued at approximately $59.5 billion.[6] Pioneer filed its proxy statement with the SEC on January 8, 2024,[7] and Pioneer's stockholders approved the merger on February 7, 2024.[8] ExxonMobil announced that it had completed the acquisition on May 3, 2024.[9]

Before the acquisition, Plaintiff Operating Engineers Construction Industry and Miscellaneous Pension Fund beneficially owned Pioneer stock.[10] In response to the announcement of the transaction, Plaintiff served a demand to inspect Pioneer's books and records pursuant to Section 220 of the Delaware General Corporation Law.[11] The demand sought to investigate potential breaches of fiduciary duty by Pioneer's senior management and directors in connection with the merger.[12]

Plaintiff's theory of possible wrongdoing is that Sheffield misled the Pioneer Board of Directors in connection with its consideration of the merger. Pioneer had

---

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 60.

[7] *Id.* ¶ 43.

[8] JX-41 at 2.

[9] PTO ¶ 65.

[10] Dkt. 1 ("Compl."), Ex. 1 at Ex. 2.

[11] PTO ¶ 4.

[12] *See* Compl., Ex. 1.

announced Sheffield's retirement on April 26, 2023.[13]  By August 2023, the Board was considering two possible transactions: Pioneer's acquisition of Party A; and ExxonMobil's acquisition of Pioneer.[14]  Of those two possibilities, only the deal with ExxonMobil would trigger Sheffield's change-in-control benefits.[15]  Plaintiff alleges that Sheffield was improperly incentivized to pursue the acquisition by ExxonMobil over the acquisition of Company A for that reason.[16]

In response to the Section 220 demand, Pioneer produced many hundreds of pages of documents including Board minutes, materials presented to the Board by Pioneer's management and advisors, memoranda sent to the Board by Pioneer management, engagement letters and relationship disclosures from the Board's financial advisors, and D&O questionnaire responses.[17]

Plaintiff filed this action in advance of the stockholder vote to preserve standing.[18]  After Pioneer's initial production, Plaintiff continued to seek emails and text messages between Sheffield and ExxonMobil's CEO and Executive Chair, Darren

---

[13] PTO ¶ 35.

[14] *Id.* ¶ 42.

[15] *Id.* ¶ 32.

[16] Compl. ¶ 11.

[17] *See, e.g.*, JX-7 (April 21, 2023 board minutes); JX-8 (May 15, 2023 board memorandum); JX-27 (Petrie Partners, LLC engagement letter dated October 5, 2023); JX-40 (Sheffield's D&O questionnaire); *see also* Dkt. 16 (September 3, 2024 Status Report stating Pioneer produced books and records on March 12, 2024, March 20, 2024, March 29, 2024, and May 16, 2024).

[18] PTO ¶ 7.

Woods, from January 1, 2023, through February 7, 2023, regarding the topics identified in the Pre-Trial Order.[19]

At trial, in addition to pointing out Sheffield's possible conflicts and leading role in the merger negotiations, Plaintiff relied on a May 2, 2024 FTC Consent Order to bolster its bid for emails and texts. According to the FTC complaint, Sheffield had "campaigned to organize anticompetitive coordinated output reductions between and among U.S. crude oil producers, and others, including the Organization of Petroleum Exporting Countries ('OPEC')."[20] The FTC asserted that Sheffield's "sustained and long-running strategy to coordinate output reductions" included his use of "text messages" to "discuss[] crude oil market dynamics, pricing, and output."[21]

In her Final Report, Senior Magistrate Molina ruled in favor of Pioneer. She concluded that Plaintiff had failed to adequately allege a credible basis for possible wrongdoing.[22] She further concluded that Plaintiff had failed to demonstrate that requested emails and text messages were necessary and essential, even if Plaintiff had carried its burden to demonstrate a proper purpose.[23]

---

[19] *Id.* ¶ 67(a).

[20] JX-45 at 1.

[21] *Id.* at 2.

[22] Final Report at 16:9–16.

[23] *Id.* at 21:2–9.

Plaintiff filed exceptions to the Final Report, which the parties fully briefed.[24]

I heard oral argument on May 20, 2025.[25]

## II. ANALYSIS

On exceptions, Plaintiff argues that the Senior Magistrate erred by concluding that Plaintiff failed to meet the credible basis requirement. Plaintiff also argues that the Senior Magistrate erred in setting the scope of inspection.

Plaintiff has met the credible basis requirement, in my view. A plaintiff must demonstrate a credible basis to investigate possible wrongdoing, but the Delaware Supreme Court described that standard as the "lowest possible burden of proof."[26] To meet it, a stockholder need not prove that the wrongdoing "actually occurred"[27] nor show that wrongdoing is even "probable."[28] Any such requirement "would completely undermine the purpose of Section 220 proceedings, which is to provide shareholders the access needed to make that determination in the first instance."[29] To state a

---

[24] Dkt. 48 (Pl.'s Notice of Exceptions); Dkt. 53 (Pl.'s Opening Br.); Dkt. 58 (Def.'s Answering Br.); Dkt. 60 (Pl.'s Reply Br.).

[25] Dkt. 64.

[26] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 123 (Del. 2006).

[27] *Marmon v. Arbinet-Thexchange, Inc.*, 2004 WL 936512, at *4 (Del. Ch. Apr. 28, 2004); *accord Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 681 A.2d 1026, 1031 (Del. 1996) ("While stockholders have the burden of coming forward with specific and credible allegations sufficient to warrant a suspicion of waste and mismanagement, they are not required to prove by a preponderance of the evidence that waste and mismanagement are actually occurring.").

[28] *Lebanon Cnty. Emps.' Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *8 (Del. Ch. Jan. 13, 2020), *aff'd* 243 A.3d 417 (Del. 2020).

[29] *La. Mun. Police Emps.' Ret. Sys. v. Countrywide Fin. Corp.*, 2007 WL 2896540, at *12 (Del. Ch. Oct. 2, 2007), *order clarified*, 2007 WL 4373116 (Del. Ch. Dec. 6, 2007).

credible basis, a stockholder need only establish by a preponderance of the evidence that there is a credible basis to suspect a possibility of wrongdoing.[30] Given the details in the demand and facts presented at trial, Plaintiff exceeded this low bar. And the Senior Magistrate acknowledged whether Plaintiff had stated a credible basis presented a "close call."[31]

Although Plaintiff has met the credible basis requirement, it is not entitled to additional documents, because I reach the same conclusion as the Senior Magistrate as to scope.

Because this action was filed before the General Assembly amended Section 220 to import a new legal regime,[32] decades of carefully crafted judge-made law govern this scope analysis.

Under the prior regime, "[w]hen tailoring the production order, the court must balance the interests of the stockholder and the corporation."[33] Delaware courts struck this balance by limiting a stockholder-plaintiff's inspection to those records "essential and sufficient" to his stated purpose and by placing the burden of proof on

---

[30] *See AmerisourceBergen*, 2020 WL 132752, at *6; *see also Seinfeld*, 909 A.2d at 118 (holding that a Section 220 plaintiff need only allege a "'credible basis' from which a court can infer that mismanagement, waste or wrongdoing *may* have occurred" (emphasis added)).

[31] Final Report at 19:12–13.

[32] *See* Del. S.B. 21, 153d Gen. Assem. (2025), codified at 8 *Del. C.* § 220.

[33] *AmerisourceBergen*, 2020 WL 132752, at *24 (citing *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 569 (Del. 1997)).

the stockholder.[34] The essential-and-sufficient standard requires that, "where a § 220 claim is based on alleged corporate wrongdoing, and assuming the allegation is meritorious, the stockholder should be given enough information to effectively address the problem, either through derivative litigation or through direct contact with the corporation's directors and/or stockholders."[35]

In the taxonomy of books and records, there are "Formal Board Materials," "Informal Board Materials," and "Officer-Level Materials."[36] The scope of stockholder inspection is typically limited to Formal Board Materials. As the Delaware Supreme Court has explained, where "a company observes traditional formalities, such as documenting its actions through board minutes, resolutions, and official letters, it will likely be able to satisfy a Section 220 petitioner's needs solely by producing those books and records."[37]

But a stockholder can inspect Informal Board Materials and Officer-Level Materials if the stockholder "demonstrate[s] a need for broader inspection."[38] A

---

[34] *KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 751–52 (Del. 2019) (quoting *Leviton Mfg. Co.*, 681 A.2d at 1035).

[35] *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 115 (Del. 2002).

[36] *AmerisourceBergen*, 2020 WL 132752, at *24–25.

[37] *Hightower v. SharpSpring, Inc.*, 2022 WL 3970155, at *9 (Del. Ch. Aug. 31, 2022); *see also Palantir Techs.*, 203 A.3d at 752–53 ("[T]he principle [is] that the Court of Chancery should not order emails to be produced when other materials (*e.g.*, traditional board-level materials, such as minutes) would accomplish the petitioner's proper purpose."); *AmerisourceBergen*, 2020 WL 132752, at *24 ("The starting point (and often the ending point) for an adequate inspection will be . . . Formal Board Materials.") (cleaned up).

[38] *Hightower*, 2022 WL 3970155, at *9.

stockholder can demonstrate a need by, for example, showing a discrepancy between public disclosures and Board materials or by showing that the Formal Board Materials do not provide details as to key events.[39]

Here, Plaintiff has failed to identify the foothold needed to inspect beyond the Formal Board Materials. Plaintiff contends that Sheffield "withheld key information from the Board," but Plaintiff does not specify what that key information might be.[40] Plaintiff suggests that Sheffield had developed a "pattern" of discussing material price terms with Woods without the Board's permission, pointing to the Consent Order as a reason to be suspicious of his use of text messages.[41] But a fiduciary's allegedly ill-advised texts sent in one context does not entitle a stockholder to inspect that fiduciary's text for all purposes.

As the Senior Magistrate observed, the produced Board materials are extensive.[42] The mere possibility that some additional details might exist in informal communications does not render those documents "necessary and essential" to

---

[39] *See, e.g., Palantir Techs.,* 203 A.3d at 742 (finding non-emails insufficient where the defendant "did not honor traditional corporate formalities . . . and had acted through email in connection with the same alleged wrongdoing that [the plaintiff] was seeking to investigate").

[40] Compl. ¶ 33.

[41] Pl.'s Opening Br. at 15, 29, 35, 44.

[42] *See* Final Report at 19:21–20:2, 24:12–16; *see also* JX-5–JX-7, JX-9–JX-12, JX-16–JX-17, JX-20–JX-21, JX-26, JX-32–JX-34 (various confidential board materials, financial models, and investor presentations providing the detailed financial and strategic information considered by the Board).

understanding the Board's decision-making.[43] Plaintiff argues that its demand for electronic communications was "narrowly circumscribed,"[44] and that is a fair description of Plaintiff's request. But Plaintiff has not demonstrated that even this targeted scope is necessary under the circumstances.

## III.    CONCLUSION

I overrule Plaintiff's exceptions and adopt the Magistrate's Final Report.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)

---

[43] *See, e.g.*, *Hightower*, 2022 WL 3970155, at *9 ("The principle is that the Court of Chancery should not order emails to be produced when other materials (*e.g.*, traditional board-level materials, such as minutes) would accomplish the petitioner's proper purpose." (quoting *Palantir Techs.*, 203 A.3d at 752–53)).

[44] Pl.'s Opening Br. at 45.